[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] Memorandum of Decision regarding Respondent Father's Motion to Vacate OTC, dated Nov. 1, 2001 And Petitioner's Motion to Consolidate, dated Nov. 27, 2001
On September 7, 2001, the Commissioner of the Department of Children and Families (DCF) requested of this Court and obtained an Order of Temporary Custody (OTC) and filed with that request an underlying petition alleging that Courtney A age 4, was neglected in that she was being denied proper care and attention, physically, educationally, emotionally or morally, and/or that she was being permitted to live under conditions, circumstances or associations injurious to her wellbeing.
On September 17, 2001, mother and father appeared in this Court and were advised of their rights. Counsel was appointed for each respondent. By agreement the OTC was continued without prejudice to seek and receive a hearing on the issue of immediate physical danger from surroundings. Denials were entered to the allegations of the petition and the OTC. Psychological evaluations were ordered by agreement of the parties and the matter was continued to October 30, 2001 for a case status conference.
On November 1, 2001, respondent father filed a Motion to Vacate OTC, alleging that he was not the custodial parent at the time of the OTC, that the only allegation against him was that his visitation with his daughter was inconsistent, that he presently had unsupervised visitation which included overnights, and that DCF was acknowledging that the child would not be in immediate danger in father's custody. This motion is a subject of this memorandum of decision. CT Page 16172
On November 6, 2001, respondent mother filed a motion for a psychological evaluation of father. On November 14, 2001, after hearing, the motion was denied and the hearing on the OTC was assigned for December 10, 2001.
On November 27, 2001, the petitioner filed a Motion to Consolidate the trial on the OTC with a trial on the underlying petition, which motion is one of the subjects of this memorandum of decision. During argument on this motion, the assistant attorney general acknowledged that DCF had no concerns about the safety of Courtney with her father. Courtney had been placed by DCF with her maternal grandmother upon execution of the OTC, together with a half-sister, while another half-sister was placed by DCF with that child's father.
Argument was made by father that there was no reason why Courtney should not be placed with him, since there was no danger to the child and DCF allowed and encouraged unsupervised visits and overnight visits, found the aftermath of each to be appropriate, and had no fears about Courtney being with father. DCF, however, argued that Courtney should stay with maternal grandmother because she and her half-sister are bonded, and Courtney was doing very well with her grandmother. There claim is that it is in Courtney's best interest to be with her sister in a caring, loving home, rather than removing her to live with her father. This Court does not agree.
The Supreme Court of the United States has spoken to this issue from many different directions, always arriving at the same conclusion:
 "It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." Prince v. Massachusetts, 321 U.S. 158, 166
(1944).
 The integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment. Griswald v. Connecticut, 381 U.S. 479, 496
(1965).
The Supreme Court has gone on to conclude that the above principles apply even where the family unit is no longer intact. In distinguishing the rights of the state and the rights of the individual, the Court, quoting in part Kovacs v. Cooper, 336 U.S. 77, 95 (1949) (Frankfurter, J., concurring) stated: CT Page 16173
 "The private interest here, that of a man in the children he has sired and raised, undeniably warrants deference and, absent a powerful countervailing interest, protection. It is plain that the interest of a parent in the companionship, care, custody, and management of his or her children `come[s] to this Court with a momentum for respect lacking when appeal is made to liberties which derive merely from shifting economic arrangements'". Stanley v. Illinois, 405 U.S. 645, 651 (1972).
Justice White, writing for the majority in Stanley, also notes the following: "We observe that the State registers no gain towards its declared goals when it separates children from the custody of fit parents." P. 652.
In the case before this Court, DCF has offered no reason for not placing Courtney with her father other than that she has a bond with her half-sister one year her senior. That bond can be preserved by extensive visitation. DCF's argument that father's bond can be preserved by extensive visitation, flies in the face of a long established principle that, "absent a powerful countervailing interest", a child belongs with her parent. In this case that parent cannot be mother at this time. But there is no reason why it cannot be father.
The State and mother are entitled to a hearing on the Order of Temporary Custody. That hearing is scheduled to be heard on December 10, 2001. Therefore, the motion to vacate the OTC is denied at this time. However, consistent with the law as cited above, the OTC is hereby modified as follows, effectively immediately: "The temporary care and custody of said child shall be vested in Michael A (father) pending a hearing as set forth below on the confirmation of this order."
Three months have passed since the original Order of Temporary Custody was granted. DCF now moves to consolidate that delayed hearing with the underlying neglect petition. In the interest of judicial economy, the issues need not be tried twice. Although the focus of an OTC trial is "immediate physical danger from surroundings", that issue is most pressing when the right of trial within ten days is exercised. When that issue is suspended while the parties discuss the entire case through case status conferences and hearings on motions, the immediacy of the issue tends to vitiate and meld into the myriad of issues surrounding the entire case. While the issue of immediate danger is still of vital importance, there comes a time when the importance of the issues in the underlying petition gain momentum and when that time is reached it is CT Page 16174 appropriate to consolidate the issues into one trial. Such is the case here. The Motion to Consolidate is granted. The trial on December 10, 2001 and subsequent dates shall include the issue of the OTC and the issues of the underlying neglect petition.
Mack, J.